PER CURIAM.
The Department of Professional Regulation, Board of Chiropractic, appeals a final order concluding that the adopted amendment to rule 21D-11.001(2)(c), Florida Administrative Code, and the proposed amendment to rule 21D-17.0045(1) are invalid exercises of delegated legislative authority. The order also determined that Sherman College had standing to challenge the subject rule amendments because it proved that it is substantially affected by this agency action. §§ 120.54(4) and 120.56(1), Fla.Stat. (1993). Because we hold that the hearing officer correctly determined that the rule amendments are invalid exercises of legislative authority, that Sherman College had standing to challenge these rules, and that the Division had jurisdiction to entertain the challenge to rule 21D-17.0045(1), we affirm the order. We do not find it necessary to address the issue on cross appeal.
On August 21, 1992, the Department published notice of amendment to rule 21D-11.001(2), entitled “Application for Licen-sure,” which became effective when no hearing was requested regarding the amendment. The amendment adds the following language to subparagraph (2)(c) of the rule:
For the purpose of determining whether a chiropractic college is recognized and approved by the United States Department of Education [USDOE] and the Council on Postsecondary Accreditation [COPA], the Board will require the applicant to show not only regional accreditation but also professional accreditation of the chiroprac *560 tic college from which the applicant graduated.
On February 17, 1993, the Department published notice of proposed amendment to rule 21D-17.0045, entitled “Chiropractic Physician Candidate Training Program,” which proposed to add the following language to sub-paragraph (1):
To demonstrate recognition and approval by the U.S. Office of Education and the Council on Postsecondary accreditation, a candidate must show that the chiropractic college from which the candidate received his/her degree, maintained both regional and professional accreditation.
On March 3, 1993, the Board entered a final order denying Sheryll Indiaan’s application for examination and licensure as a chiropractic physician. The application showed that Indiaan is a graduate of Sherman College, a college of Straight Chiropractic located in Spartanburg, South Carolina. As grounds, the order stated that Sherman College did not meet the requirements of the recent amendment to subsection 460.406(l)(e), because it had only regional or institutional accreditation by USDOE and COPA but not professional or specialized accreditation by an agency recognized by US-DOE and COPA. On March 11, 1993, Sherman College filed separate petitions pursuant to subsection 120.54(4) and subsection 120.56(1), Florida Statutes (1993), challenging the validity of the amendments to rules 21D-11.001(2)(c) and 21D~17.0045(1) on several grounds, including that they are invalid exercises of legislative authority and violate the equal protection and substantive due process provisions of the United States and Florida constitutions.
After final hearing, the hearing officer entered a final order ruling that Sherman College had standing and that the adopted amendment to rule 21D-11.001(2)(e) and the proposed amendment to rule 21D-17.0045(1) were invalid exercises of delegated authority. The hearing officer made the following findings of fact:
13. The debate over relative merits of professional versus regional accreditation is mirrored in the debate over “straight” versus “mixer” philosophy of chiropractic. Simply described, the straight chiropractic professional concentrates on remedying subluxations (misalignments) of the spine as a means to good health. The “mixer” professional is involved in a wider range of health care services. Sherman College is a “straight” chiropractic institution, as reflected in its name, but it still recognizes that state licensing requirements throughout the country mandate the teaching of courses beyond straight practice; the college offers those courses to enable its students to pass state examinations and comply with state laws.
14. Section 460.406(l)(c), F.S. expressly forbids the denial of an application for licensure or examination based on the preference of one philosophy over another. Petitioners contend that the rule amendments at issue violate that prohibition.
[[Image here]]
16. Sherman College’s claim that it is substantially affected by the rule amendments is supported by the weight of evidence. Before the Board voted to discontinue allowing Sherman college graduates to take the licensure examination the college had approximately 20 students from Florida enrolled. That enrollment has dropped now to a single student out of a total of approximately 132 students. There are approximately 83 alumni of Sherman College practicing in Florida who could otherwise refer students to the college. An institution whose students are barred from practice in a state loses reputation and suffers economic loss, not just in lost tuition and fees but also through loss of donations from alumni. Sherman College received an average of $400 per year per graduate donations. Dr. Thomas Ge-lardi, the president and founder of Sherman College reasonably estimates that it loses several thousand dollars a month, primarily because of the rules’ impact on its enrollment.
The hearing officer made the following conclusions of law:
19. At hearing, Sherman College proved its standing to challenge the rule amendments at issue. That is, it is “sub *561 stantially affected” pursuant to sections 120.54(4) and 120.56(1), F.S.
20. Respondent’s reliance on Fla. Medical Association v. Department of Professional Regulation, 426 So.2d 1112 (Fla. 1st DCA 1988), for its argument that Sherman College lacks standing, is misplaced. That ease and a long line of cases which follow it aptly distinguish standing in a rule-changing proceeding from standing in cases in which the grant of a permit or license is at issue. See, for example, Department of Professional Regulation v. Fla. Dental Hygienist Assn., 612 So2d 646 (Fla. 1st DCA 1993).
While we readily accept the premise that physicians, ophthalmologists in particular, have no “legally recognized interest in being free from competition ...” [citation deleted], it by no means follows that the assertion of interest economic in nature can never furnish the basis for standing to challenge proposed or adopted agency rules. (Fla. Medical Assn., supra, at 1115)
We are further reminded by the court that in State Department of Health and Rehabilitative Services v. Alice P., 367 So2d 1045 (Fla. 1st DCA 1979) it recognized a physician had standing pursuant to section 120.54(4), F.S. when he demonstrated that the agency’s cut-off of funds for elective abortions decreased the number of patients served by the abortion clinic of which he was the director. Sherman College suffers the same type of loss; it loses students who are barred from the Florida examination, just as the physician in Alice P. lost patients who were denied funding for abortions. Moreover, it is the college which seeks accreditation, to maintain its certificate of quality, to sustain its reputation, to attract future students and to help insure professional standing for its existing students. The college’s interest, in that sense, is more immutable than any student’s.
[[Image here]]
23. Section 460.406, F.S. requires only that an applicant be a graduate of a chiropractic college accredited by an agency recognized and approved by the USDOE and the COPA. The rule amendments at issue expand the statute and add the requirement that accreditation must be both regional and professional. There is no authority for that requirement.
[[Image here]]
25. ... [TJhere is absolutely no legislative intent, evident or reasonably inferred, to support a distinction between regional and professional accrediting agencies and to require that an applicant graduate from a college approved by both types. The change of the word “or” to “and” in section 460.406, F.S. in 1990 does not supply that intent. Both before and after the statutory amendment, both types of accreditation existed and both types were approved by the USDOE and COPA.
26. The rule amendments are not supported by reason or logic. The preponderance of evidence presented in this proceeding reveals that for chiropractic education, there is not a functional nor qualitative distinction between professional and regional accreditation. Both types involve significant and pervasive review of the institution’s preparation of its students for professional practice.
27. The Petitioners met their burden of proving that the rule amendments are arbitrary and capricious and enlarge the specific provision of law implemented, and are therefore invalid.
The record contains competent, substantial evidence to support the findings of fact upon which the hearing officer based her conclusions of law. Finding no error in the conclusions of law, we affirm the order under review.
AFFIRMED.
ZEHMER, C.J., DAVIS, J., and WENTWORTH, Senior Judge, concur.